UNITED STATES of America,
Plaintiff–Appellee,

v.

Timothy Jay BLACKWELL, a/k/a Tiny; Lawrence Dean Lenihan, a/k/a Chitlin; Larry William White, Defendants–Appellants.

No. 89–5591.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 12, 1990.

Decided April 9, 1990.

Keith all the relief he requested in this action. *See Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir.1984).

Terry Goodwin Harn, argued, G. Nicholas Herman, and Steven A. Bernholz, on brief, Coleman, Bernholz, Gledhill & Hargrave, Chapel Hill, N.C., for appellants.

Harry L. Hobgood, Asst. U.S. Atty., argued and Robert H. Edmunds Jr., U.S. Atty., Greensboro, N.C., on brief, for appellee.

Before CHAPMAN and WILKINS, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

RICHARD L. WILLIAMS, District Judge:

This is an interlocutory appeal from the denial of the appellants' motions to dismiss the indictment for violation of the double jeopardy clause of the fifth amendment and for improper venue. Because the district court was correct in concluding that the protection offered criminal defendants by the double jeopardy clause is not implicated by the pending prosecution, we affirm the denial of that part of the appellants' motions. Because we do not have interlocutory jurisdiction over the venue question, we decline to review the merits of that issue at this time.

## I.

Appellants Timothy Jay Blackwell, Lawrence Dean Lenihan, and Larry William White are members of the Durham chapter of the Hells Angels Motorcycle Club. On November 30, 1987, they were named as defendants in a two-count indictment in the Middle District of North Carolina (the North Carolina indictment). Count One charged them with distributing plastic explosives and blasting caps in violation of 18 U.S.C. §§ 2, 842(a)(3)(B), and 844(a). Count Two charged them with possession of an unregistered destructive device in violation of 26 U.S.C. §§ 5861(d) and 5871, and 18 U.S.C. § 2.

On December 15, 1987, these defendants were indicted in the Western District of Kentucky along with the national president of the Hells Angels, sixteen other members of Hells Angels chapters, the Hells Angels corporation, and the Church of the Angels (the Kentucky indictment). All of them were charged with conspiring to transport and possess firearms and explosives, and some of the defendants who are not parties to this appeal were also charged with various substantive offenses. The alleged motive of the conspiracy was to kill members and destroy property of the rival Outlaws Motorcycle Club in retaliation for the August 12, 1986, murder of a Hells Angels Motorcycle Club member in Louisville, Kentucky. As overt acts committed in furtherance of the conspiracy, the indictment alleged that the defendants engaged in a national effort to obtain deadly weapons and explosives over the fourteen months following the Louisville killing.

Specifically with regard to appellants, the indictment alleges that Anthony Tait, a paid informant for the FBI, discussed the planned retaliation with Lenihan, the president of the Durham, North Carolina, chapter of the Hells Angels, on February 7, 1987. Lenihan stated that the Durham chapter could help Tait get some explosives, and set up a meeting between Tait and Timothy Blackwell, the chapter's treasurer and another of the appellants here, to discuss what was available. To follow up on the meeting with Blackwell, Tait met with Larry White, the third appellant here, to finalize the planned transfer. On or about April 21, 1987, White and Blackwell delivered plastic explosives and blasting caps to Tait, who turned them over to agents of the Bureau of Alcohol, Tobacco and Firearms.

The appellants moved on February 28, 1988, to transfer the North Carolina indictment to the Western District of Kentucky pursuant to Rule 21(b). They claimed that a single trial of the two consolidated indictments would be more convenient. The government did not oppose the motion, and on March 8, 1988, the case was so transferred.

On June 20, 1988, a superseding indictment was filed for the original Kentucky charges that did not alter the conspiracy count or subject the appellants to additional substantive charges. On July 18, 1988, the appellants were severed from the rest of the defendants to the Kentucky indictment, and their trial was postponed until after the trial of some of their codefendants was completed. Several of the Kentucky codefendants were convicted on October 28, 1988. Some, including the Hells Angels president, were convicted on the conspiracy count while others were found guilty on some of the substantive counts included in that indictment. On December 6, 1988, the government moved to dismiss the conspiracy charge pending against the appellants and recommended that the Kentucky district court return the transferred substantive explosives charges to the Middle District of North Carolina. This motion was granted on January 30, 1989, and the substantive charges were transferred back to North Carolina.

After the case returned to North Carolina, the appellants moved to dismiss the pending charges on the grounds of improper venue and double jeopardy. The district court denied this motion on April 25, 1989. The defendants filed an interlocutory appeal on their double jeopardy motion pursuant to *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and the district court certified the venue question for this appeal.

## II.

The appellants' first argument is that the dismissal with prejudice of the conspiracy charge in the Western District of Kentucky triggers the protection of the double jeopardy clause of the fifth amendment and bars the prosecution of the charges currently pending in the Middle District of North Carolina.

The double jeopardy clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The primary guarantee offered by this constitutional provision is its protection against being subjected to successive prosecutions for the same criminal offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). This aspect of the double jeopardy protection gives finality to the criminal process, and "guarantees that an accused who has once stood the ordeal of criminal prosecution ... shall not be required to 'run the gauntlet' of trial again for the same alleged misconduct." *United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir.1988); *see also Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957).

Given the recognized purpose of this aspect of the double jeopardy clause, it is not surprising that its protection does not arise until a jury has been impaneled or the court sitting without a jury has begun to hear evidence. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977); *United States v. Bonilla Romero*, 836 F.2d 39, 42 (1st Cir.1987), *cert. denied,* — U.S. —, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). Because the appellants' trial under the Kentucky indictment had not begun at the time the conspiracy charge was dismissed, and because the prosecutions involved in this case were concurrent and not successive, this aspect of the double jeopardy protection is not implicated in this case.

The appellants assert as an alternative bar to the instant prosecution that, regardless of whether this prosecution is for the "same offense" that was dismissed, it is barred by the doctrines of res judicata and collateral estoppel embodied in the protection guaranteed by the double jeopardy clause. *See Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Unlike the successive prosecutions prong of the double jeopardy protection discussed above, this aspect of the clause is implicated by the pretrial disposition of a prior case if an ultimate issue in the second prosecution was conclusively litigated and necessarily determined as part of the judgment entered in the first case. *See, e.g., id.* at 444, 90 S.Ct. at 1194; *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916); *United States v. Head*, 697 F.2d 1200, 1208 (4th Cir.1982), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983). As this Court stated in *Ragins:*

> [O]nce an issue of ultimate fact has been resolved in a defendant's favor by a valid and final judgment in a criminal proceeding, the government may not relitigate that issue in a subsequent criminal prosecution against him. If the fact necessarily determined in the first trial is an essential element of the second offense, collateral estoppel may operate as a complete bar against the subsequent prosecution, affording the defendant "double jeopardy" protection, even when that prosecution is not for the "same offense" as the first. In other instances, collateral estoppel may operate not wholly to preclude prosecution but simply to foreclose the relitigation of certain issues of fact that were necessarily resolved in the defendant's favor in the first trial.

840 F.2d at 1194 (citations omitted). The burden is on the defendant to show that the issue sought to be precluded was actually litigated in the prior proceeding. *Dowling v. United States*, 493 U.S. —, 110 S.Ct. 668, 673, 107 L.Ed.2d 708, 719 (1990); *Ragins*, 840 F.2d at 1194.

The doctrine of res judicata does, of course, bar the government from subjecting the appellants to prosecution for the conspiracy alleged in the Kentucky indictment. *See Oppenheimer*, 242 U.S. at 87, 37 S.Ct. at 69. Furthermore, the doctrine of collateral estoppel may preclude the

government from proving the existence of that conspiracy in any future court proceeding. It may be that this fact will prevent certain testimony from coming into evidence at trial under the coconspirator exception to the hearsay rule. See Fed.R. Evid. 801(d)(2). But that issue is not currently before us, and we do not express any opinion on it in deciding this interlocutory appeal. For purposes of this appeal, it is sufficient to recognize that the conspiracy alleged in the Kentucky indictment is not an essential element of the pending charges. Therefore, appellants have not met their burden of demonstrating that an element of the pending prosecution was actually litigated and decided in the Kentucky proceeding, and the government is not collaterally estopped from proving any fact critical to this prosecution.

## III.

The appellants next argue that the instant indictment should be dismissed because the Kentucky district court did not have the authority to retransfer the case to the Middle District of North Carolina over their objection, and that the government's "request" to transfer constitutes impermissible forum shopping. Judge Tilley denied the appellants' motions to this effect below, but certified the transfer issue for this appeal because the defendants planned to exercise their right to an interlocutory appeal of his disposition of their double jeopardy motion.

None of the parties to this appeal has argued that this Court does not have jurisdiction over the certified venue question. Nevertheless, the Court is obligated to review its jurisdiction sua sponte in all cases. Although we are reluctant to decide cases without affording the parties the opportunity to brief all dispositive issues, because it is clear that we do not have jurisdiction over the improper venue/transfer issue at this time, further argument is unnecessary.

### A. Improper Venue/Transfer

■ The district courts have statutory authority to certify certain issues for appeal on an interlocutory basis in civil cases,

see 28 U.S.C. § 1292(b), but no such provision exists for criminal cases. Thus, the jurisdiction of this Court in criminal cases is limited to review of "final decisions of the district courts," 28 U.S.C. § 1291, and interlocutory appeals are not generally allowed.

In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court addressed the jurisdiction of the courts of appeals over interlocutory issues in criminal cases and found an exception to this general prohibition. The Court held that "pretrial orders rejecting claims of former jeopardy ... constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of § 1291." *Id.* at 662, 97 S.Ct. at 2042. The Court specifically stated that its determination that the pretrial denial of a motion to dismiss for violation of the double jeopardy clause did not mean "that other claims contained in the motion to dismiss are immediately appealable as well." *Id.* at 663, 97 S.Ct. at 2042 (no jurisdiction to review rejection of a challenge to the sufficiency of the indictment before trial). This position was confirmed in *United States v. MacDonald*, 435 U.S. 850, 857 n. 6, 98 S.Ct. 1547, 1551, n. 6, 56 L.Ed.2d 18 (1978), *rev'g* 531 F.2d 196 (4th Cir.1976), where the Court reiterated that "a federal court of appeals is without pendent jurisdiction over otherwise nonappealable claims even though they are joined with a double jeopardy claim over which the appellate court does have interlocutory jurisdiction."

■ Such other claims are appealable only if they too fall within the collateral order exception to the final judgment rule that was first recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). As applied in criminal cases, to fall within this exception an interlocutory order must be: (1) the trial court's complete, formal, final rejection of the claim; (2) collateral to, and separable from, the issue of guilt or innocence; and (3) an adjudication of an important right that would be lost irreparably if

review awaited final judgment. *Mac-Donald*, 435 U.S. at 858–60, 98 S.Ct. at 1551–52 (finding that speedy trial claims do not meet any aspect of this standard). The Court has warned that the requirements of the collateral order exception to the final judgment rule should be applied "with the utmost strictness in criminal cases." *Flanagan v. United States*, 465 U.S. 259, 265, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984).

In this case, there is some reason to think that the first two of these criteria have been satisfied. Although the trial court may revisit the issue of venue, for example, if the government does not prove that the criminal activity involved in the case occurred in the Middle District of North Carolina, it has entered its final rejection of the defendants' improper transfer argument. Further, this issue is clearly separate from the guilt or innocence of the appellants; even more so than their double jeopardy claim, considering that double jeopardy incorporates the proof doctrine of res judicata and collateral estoppel.

However, the third prong of the *Cohen /Abney /MacDonald* test is not met by the venue/improper transfer issue presented in this case. The statutory venue right asserted here is not as important as the constitutional protections that have been the basis for allowing other interlocutory criminal appeals. *See Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (Congressman's claim of privilege based on speech and debate clause); *Abney, supra* (double jeopardy); *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (reduction of bond). Moreover, the appellants' rights will not be lost if review of this issue awaits final judgment. *Cf. United States v. French*, 787 F.2d 1381, 1383 (9th Cir.1986) (Rule 20 retransfer does not fall within collateral order exception to final judgment rule). If the defendants are convicted and persuade this Court on appeal from that conviction that the district court did not have venue over the case, the conviction can be overturned and the indictment quashed, vindicating all of their rights. Unlike double jeopardy and denial of bond, the very act of going to trial in this case will not violate the right the appellants assert. *See United States v. Martin*, 620 F.2d 237, 238–39 (10th Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

### B. Impermissible Forum Shopping

The appellants also contend that the North Carolina indictment should be dismissed because the government has engaged in impermissible forum shopping. They allege that the government was not satisfied with the results it got in the Kentucky prosecution, so it decided to transfer the case to another, presumably more hospitable, forum. The district court rejected this argument, finding that the government's motive in seeking to retransfer the case was a desire that it be tried where the criminal acts allegedly occurred and where the instant indictment was handed down. For the reasons outlined above, this issue does not meet the applicable standards for interlocutory review either, and this Court does not have jurisdiction to review it at this time.

### IV.

Because the double jeopardy clause does not prevent the instant prosecution, and because we do not have interlocutory jurisdiction over the other issues raised on this appeal, the judgment of the district court is affirmed.

AFFIRMED.