**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4525

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER ROBERT SUEIRO,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:17-cr-00284-RDA-1)

Argued: October 31, 2019                    Decided: January 9, 2020

Before KEENAN, FLOYD, and RICHARDSON, Circuit Judges.

Dismissed by published opinion. Judge Floyd wrote the opinion in which Judge Keenan and Judge Richardson joined.

**ARGUED:** Eugene Victor Gorokhov, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant. Kellen Sean Dwyer, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Ziran Zhang, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant. James E. Burke, IV, Trial Attorney, Child Exploitation & Obscenity Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

FLOYD, Circuit Judge:

Appellant Christopher Sueiro awaits trial on four federal child pornography charges. Throughout over a year of pretrial hearings, Sueiro consistently asked to represent himself pursuant to *Faretta v. California*, 422 U.S. 806 (1975). Although criminal defendants have a Sixth Amendment right to represent themselves, that right is not absolute. *See Indiana v. Edwards*, 554 U.S. 164, 171 (2008). On July 16, 2019, after a hearing, the district court issued a written order denying Sueiro's *Faretta* motion. Sueiro seeks to appeal that denial so that he may represent himself at trial. For the reasons that follow, this Court does not have subject-matter jurisdiction to consider Sueiro's interlocutory appeal.

I.

Whether we have subject-matter jurisdiction over an interlocutory appeal from the denial of a pretrial *Faretta* motion is a question of first impression. We review our jurisdiction de novo. *See Qingyun Li v. Holder*, 666 F.3d 147, 149 (4th Cir. 2011). Under the final judgment rule, federal appellate court jurisdiction is limited to reviewing "final decisions of the district court." *See Flanagan v. United States*, 465 U.S. 259, 263 (1984) (quoting 28 U.S.C. § 1291). In the criminal context, this means that this Court generally does not have appellate jurisdiction until after the imposition of a sentence. *See id*. (citing *Berman v. United States*, 302 U.S. 211, 212 (1937)); *see also United States v. Lawrence*, 201 F.3d 536, 538 (4th Cir. 2000).

Sueiro argues that the denial of a *Faretta* motion falls within a narrow exception to the final judgment rule: the collateral order doctrine. Under this exception, a collateral

2

order is immediately appealable if it (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits," and (3) is "effectively unreviewable on appeal from a final judgment." *Flanagan*, 465 U.S. at 265 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). Under the third prong, collateral orders in criminal cases are only "effectively unreviewable" if "an important right . . . would be lost irreparably if review awaited final judgment." *See United States v. Blackwell*, 900 F.2d 742, 746–47 (4th Cir. 1990).[1]

This is not a balancing test; to fall within the collateral order doctrine, a trial court order must satisfy each condition. *Flanagan*, 465 U.S. at 265 ("[A] trial court order must, at a minimum, meet three conditions."). And in the criminal context, the trial court order

---

[1] "Lost irreparably" is a stricter variant of a phrase originating in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). In *Cohen*, a civil case, the Supreme Court found that an order was immediately appealable in part because, on appeal from a final judgment, "it w[ould] be too late effectively to review the present order and the rights conferred by the statute, if . . . applicable, w[ould] have been lost, *probably irreparably*." *Id*. at 546 (emphasis added). The Supreme Court later quoted this "lost, probably irreparably" language in criminal interlocutory appeals cases. *See Abney v. United States*, 431 U.S. 651, 658 (1977) (considering whether a motion to dismiss an indictment on double jeopardy grounds was immediately appealable); *see also United States v. MacDonald*, 435 U.S. 850, 860 (1978) (considering whether a motion to dismiss an indictment on speedy trial grounds was immediately appealable). After *Abney* and *MacDonald*, the Supreme Court emphasized that "the collateral-order exception to the final judgment rule" should be applied with "the utmost strictness in criminal cases." *Flanagan*, 465 U.S. at 265. In *Blackwell*, we cited to *MacDonald* but omitted the word "probably" from the test, leaving "lost irreparably." *Blackwell*, 900 F.2d at 746–47. Looking back almost thirty years later, it is unclear whether this was an unintentional omission or an intentional heightening of the "effectively unreviewable" standard to fit the criminal context, per the Supreme Court's admonition in *Flanagan*. *See id*. at 747 (citing *Flanagan*, 465 U.S. at 265). Though we adhere to our precedent in *Blackwell*, Sueiro's right to self-representation would not be "lost irreparably" *or* "lost, probably irreparably" if reviewed on direct appeal.

must *strictly* satisfy each condition. *See id.* ("Because of the compelling interest in prompt trials, the [Supreme] Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases.").

On appeal, Sueiro relies heavily on civil cases holding that the denial of self-representation is subject to interlocutory appeal. [2] Sueiro argues that if a civil litigant may immediately appeal the denial of self-representation, when they have no constitutional right to self-representation, then surely a criminal defendant with a Sixth Amendment right must be able to do the same. Although that argument may have some instinctive appeal, it overlooks the criminal-civil distinction within the collateral order doctrine. As discussed, the Supreme Court has recognized that the final judgment rule is "at its strongest in the field of criminal law," because of the compelling interest in the speedy resolution of criminal cases. *Flanagan*, 465 U.S. at 264–65 (internal quotation mark omitted). We are bound by this stricter interpretation and therefore rely solely on collateral order jurisprudence within the criminal context.

---

[2] Although this Circuit has not so held in a published opinion, other circuits have held that the denial of self-representation in civil litigation is immediately appealable. *See, e.g.*, *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 230 (3d Cir. 1998), *overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Prewitt v. City of Greenville*, 161 F.3d 296, 298 (5th Cir. 1998); *Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 578–81 (11th Cir. 1997), *overruled in part on other grounds by Winkelman*, 550 U.S. 516. We do not answer this question today.

4

II.

Given the narrowness of the collateral order doctrine in criminal cases, the Supreme Court has only held that four types of orders are immediately appealable: orders denying a Double Jeopardy Clause challenge, orders denying a Speech or Debate Clause challenge, orders denying a motion to reduce bail, and orders allowing for the forced medication of criminal defendants. *See Sell v. United States*, 539 U.S. 166, 175–77 (2003) (forced medication); *Helstoski v. Meanor*, 442 U.S. 500, 506–08 (1979) (Speech or Debate Clause); *Abney v. United States*, 431 U.S. 651, 655–62 (1977) (Double Jeopardy Clause); *Stack v. Boyle*, 342 U.S. 1, 3–7 (1951) (bail).

Although the Supreme Court has not ruled on whether the denial of a *Faretta* motion is subject to immediate appeal, it has held that a pretrial order disqualifying counsel in a criminal case is not immediately appealable. *See Flanagan*, 465 U.S. at 260. In *Flanagan*, the Supreme Court distinguished such a counsel-related order from other criminal contexts in which the collateral order doctrine already applied. Unlike denial of bail, the Court explained, an order disqualifying counsel may be challenged in an appeal from a final judgment, so it is therefore not "moot upon conviction and sentence." *Id*. at 266. And, unlike rights under the Double Jeopardy and Speech or Debate Clauses, which are *"sui generis"* rights "not to be tried," the "right not to have joint counsel disqualified is . . . merely a right not to be convicted in certain circumstances." *Id*. at 267.

Albeit in dictum, the Supreme Court in *Flanagan* also discussed the interplay between a presumption of prejudice in an appeal from a final judgment and the third prong of the collateral order doctrine—whether an order would be "effectively unreviewable on

5

appeal from a final judgment." 465 U.S. at 265. In *Flanagan*, it was an open question whether prejudice would be presumed upon post-conviction appeal from a disqualification order. *Id*. at 267–68. But the Court stated that if prejudice were presumed, a disqualification order would not be "effectively unreviewable on appeal from a final judgment" and, therefore, would not be immediately appealable. *Id*. at 268. Today, there is no question that if Sueiro's *Faretta* motion were wrongly denied, this Court would presume prejudice on appeal from a conviction. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018) ("Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to harmless-error review."). In fact, the Court in *Flanagan* even stated that post-conviction review of the "Sixth Amendment right to represent oneself" is "fully effective," because it carries a presumption of prejudice on appeal from a final judgment. *See* 465 U.S. at 267–68 (noting that the petitioners had "correctly conceded" this point).

To avoid application of *Flanagan*'s apposite dictum, Sueiro argues that a more recently decided forced medication case should control. Like the right not to be forcibly medicated, the right to represent oneself protects the autonomy and dignity of criminal defendants. *See McKaskle v. Wiggins*, 465 U.S. 168, 176–77 (1984) ("The right to appear *pro se* exists to affirm the dignity and autonomy of the accused."). In that regard, Sueiro believes that his *Faretta* right is more akin to the right not to be forcibly medicated than to other counsel-related rights, such as the right to appointed counsel. Because *Flanagan* was decided before *Sell*, the Supreme Court did not differentiate counsel-related rights from forced medication. We do so here, and we find that this comparison fails in two respects.

6

First, the right not to be forcibly medicated is substantively distinct from the right to self-representation. In *Sell*, the Supreme Court found that the forced administration of antipsychotic medications is "effectively unreviewable on appeal from a final judgment," because "[b]y the time of trial [the defendant] will have undergone forced medication— the very harm that he seeks to avoid." *See* 539 U.S. at 176–77. The Court emphasized that forced medication cannot be undone, even through acquittal. *Id*. at 177. That is to say, acquitted defendants will still have lost their "legal right to avoid forced medication." *Id*. Although forced medication has particular fair-trial implications in the criminal context, criminal defendants and non-defendants alike enjoy a broader right not to be forcibly medicated. Therefore, it makes sense that a second, unmedicated trial experience, though it may result in a fairer trial, would not cure the experience of wrongfully being medicated. By contrast, the Sixth Amendment right to self-representation arises *only* in the context of a criminal case. Put another way, there is no corresponding, broadly held "legal right to avoid" counsel. In that sense, violation of the right to self-representation is more like other trial rights, for which the cure is a second trial.

Second, and relatedly, *Sell* did not introduce an irreparable harm test into the collateral order doctrine. Sueiro contends that, if forced to proceed with counsel in the first instance, he would suffer an ongoing harm to his autonomy that could not be vindicated in a second trial. But under the collateral order doctrine, irreparable harm is simply not the test—even when it is irreparable harm to one's autonomy or dignity. For example, the Supreme Court has held that the denial of a motion to dismiss an indictment based on prosecutorial vindictiveness is not immediately appealable, even though a vindictive

7

indictment surely causes irreparable harm to one's dignity. *See United States v. Hollywood Motor Car Co.*, 458 U.S. 263 (1982). Accordingly, *Sell* is best read as a narrow addition to the collateral order doctrine, addressing a harm (forced medication) that exists regardless of the trial context, and therefore cannot be fully remedied by a second trial.

Given the above, we are left with strongly worded dictum from *Flanagan*, in which the Supreme Court specifically cited a *Faretta* order as an example of a decision that would be effectively reviewable on appeal from a final judgment. *See* 465 U.S. at 267–68 ("[P]ost-conviction review of a disqualification order is fully effective to the extent that the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself."). As explained above, the later-decided forced medication case does not undermine our application of *Flanagan*'s dictum in the instant appeal. If Sueiro's *Faretta* motion has been wrongly denied, he will enjoy a presumption of prejudice. Additionally, Sueiro has not alleged that he will be unable to represent himself in a second trial, if he is convicted and succeeds on appeal. He does assert that if *acquitted* with counsel, he will never be able to represent himself. But if we were to find jurisdiction based on this acquittal theory, then all trial rights would be subject to immediate appeal, and the collateral order doctrine exception would swallow the final judgment rule. Therefore, we hold that the denial of Sueiro's *Faretta* motion cannot meet the third prong of the collateral order doctrine exception, and that this Court does not have subject-matter jurisdiction over Sueiro's appeal.[3]

---

[3] Because the third condition is not met, we need not address the first and second conditions.

## III.

Without offering our thoughts on the merits of Sueiro's motion, we recognize the difficult positions of everyone involved in this case. Our jurisdiction over interlocutory appeals is limited, especially in the criminal context. Because Sueiro *will* be able to represent himself if he is convicted and we ultimately reverse the denial of his *Faretta* motion, Sueiro's right to self-representation will not be "lost irreparably if review await[s] final judgment." *See Blackwell*, 900 F.2d at 746–47. We therefore dismiss Sueiro's appeal for lack of jurisdiction.

*DISMISSED*