**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 23-4055**

─────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

HEVERTH ULISES CASTELLON, a/k/a Misterio, a/k/a Sailor,

        Defendant - Appellant.

─────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:08−cr−00134−RJC−DSC−3)

─────────

Argued:  September 20, 2023                    Decided:  February 14, 2024

─────────

Before DIAZ, Chief Judge, WYNN, Circuit Judge, and KEENAN, Senior Circuit Judge.

─────────

Dismissed by published opinion.  Chief Judge Diaz wrote the majority opinion, in which Judge Keenan joined.  Judge Wynn wrote an opinion concurring in the judgment.

─────────

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

─────────

DIAZ, Chief Judge:

In this interlocutory appeal, Heverth Castellon asks us to vacate the district court's orders compelling his physical presence at a resentencing hearing.

Our precedent suggests that a noncapital criminal defendant can waive his right to be present at sentencing under Federal Rule of Criminal Procedure 43(c)(1)(B) if he does so knowingly and intelligently. *See United States v. Lawrence*, 248 F.3d 300, 304–05 (4th Cir. 2001). The district court, however, held that the Rule allows a defendant to exercise this right only by "abscond[ing] or disrupt[ing] the [sentencing] proceedings." J.A. 197.

While we doubt that the district court's ruling is correct, we lack jurisdiction over Castellon's appeal. Therefore, we must dismiss it.

I.

We vacated Castellon's 18 U.S.C. § 924(c) conviction in 2022 after the Supreme Court held that attempted Hobbs Act robbery doesn't qualify as a "crime of violence." *United States v. Castellon*, No. 20-6377, 2022 WL 4119668, at *1 (4th Cir. July 25, 2022); *see United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022). On remand, the probation office recalculated Castellon's advisory guidelines range to be 210 to 262 months in prison, and the parties agreed that a low-end sentence of 210 months was appropriate given Castellon's offenses, history, and "significant post-offense rehabilitation." J.A. 183–84. They also agreed that "a resentencing hearing [was] not required" if the court accepted their joint sentencing recommendation. J.A. 184.

2

The district court, however, ordered Castellon to appear for a resentencing hearing. It rejected the parties' claim that Castellon could be resentenced in absentia, explaining that "[o]rdinarily, a defendant being sentenced for a felony may not waive his right to be present at sentencing." J.A. 186 n.1 (citing *United States v. Tolson*, 129 F.3d 1261, 1261 (4th Cir. 1997) (unpublished table decision)).

Castellon moved to continue the hearing, arguing that Federal Rule of Criminal Procedure 43(c)(1)(B) allows a defendant to waive his appearance at resentencing. That rule provides that in general, a defendant must be present at sentencing. Fed. R. Crim. P. 43(a)(3). But it also provides that a defendant who "pleaded guilty . . . waives the right to be present . . . in a noncapital case, when the defendant is voluntarily absent during sentencing." *Id.* at 43(c)(1)(B).

The court granted Castellon's motion to continue and delayed the hearing, but reiterated its view that a defendant couldn't waive his appearance. Citing a Seventh Circuit opinion, the court found that the phrase "voluntarily absent" was "limited to a defendant's flight or adamant refusal to be transported to the hearing peacefully and does not permit waiver of a defendant's physical presence at sentencing." J.A. 191 (citing *United States v. Howell*, 24 F.4th 1138, 1143 (7th Cir. 2022)).

Castellon then moved for resentencing in absentia. He attached to the motion a signed document purporting to waive his personal appearance at resentencing.

The district court denied the motion, finding that while Castellon had asserted "'valid reasons' for resentencing in absentia," he hadn't provided the court "authority to do so." J.A. 262. Castellon moved for reconsideration, arguing that we had suggested a

3

defendant could knowingly waive his right to be present in *United States v. Lawrence*, 248 F.3d 300 (4th Cir. 2001). The district court denied the reconsideration motion, explaining that *Lawrence* "did not involve a defendant's agreement to waive his physical presence." *United States v. Castellon*, No. 3:08-cr-00134-RJC-DSC, 2023 WL 1116532, at *1 (W.D.N.C. Jan. 30, 2023). The court interpreted Rule 43(b) to permit a defendant's absence only where he had "absconded []or disrupted the present proceedings," reiterating its earlier reasoning. *Id.*

This appeal followed.

## II.

On appeal, both Castellon and the government maintain that a defendant can waive his presence at resentencing under Rule 43(c)(1)(B). Our precedent appears to support their position.

The text of Rule 43(c)(1)(B) states that a defendant waives the right to be present when he is "voluntarily absent during sentencing." Fed. R. Crim. P. 43(c)(1)(B). As we explained in *Lawrence*, the plain meaning of "voluntarily," as it has been "repeatedly used by the Supreme Court," is "knowing and understanding the waiver." 248 F.3d at 304.

We also recognized that the advisory notes to the Rule supply an *additional* interpretation of the voluntary waiver exception—for situations "where a defendant impliedly waives his right to be present by absconding before sentencing." *Id.* at 305. Our decision in *Lawrence* and the text of the Rule itself therefore suggest that a noncapital

4

defendant can, in addition to impliedly waiving his presence, voluntarily waive his right to be present at sentencing.

The district court acknowledged that a noncapital defendant could waive his presence under Rule 43 by being "voluntarily absent" during sentencing. J.A. 197. But it held that because Castellon had "neither absconded nor disrupted the [sentencing] proceedings," he couldn't be considered "voluntarily absent" within the meaning of the Rule. *Id.* Though we doubt that this conclusion is right, we lack jurisdiction over Castellon's interlocutory appeal and so must dismiss it.

### III.

### A.

Ordinarily, our appellate jurisdiction is limited to reviewing final orders of the district court. *See* 28 U.S.C. § 1291. "In the criminal context, this means that this Court generally does not have appellate jurisdiction until after the imposition of a sentence." *United States v. Sueiro*, 946 F.3d 637, 639 (4th Cir. 2020). But an exception exists for a "small class" of orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

Castellon doesn't dispute that the district court's orders aren't final orders. Rather, he argues that they are immediately appealable under the so-called "collateral order" doctrine. We disagree.

5

The collateral order doctrine is a "narrow exception" to the final judgment rule, and we apply it with the "utmost strictness in criminal cases." *Sueiro*, 946 F.3d at 639–40 (cleaned up). "Under this exception, a collateral order is immediately appealable if it (1) 'conclusively determine[s] the disputed question,' (2) 'resolve[s] an important issue completely separate from the merits,' and (3) is 'effectively unreviewable on appeal from a final judgment.'" *Id.* at 639 (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)). Collateral orders in criminal cases are only "effectively unreviewable" under the third and final prong if "an *important* right would be lost irreparably if review awaited final judgment." *Id.* (emphasis added) (cleaned up). "This is not a balancing test; to fall within the collateral order doctrine, a trial court order must satisfy each condition." *Id.* at 640.

In assessing whether we have jurisdiction under the collateral order doctrine, we examine "the entire category of orders" the appeal implicates—not "the particular order at issue." *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 87 (4th Cir. 2014) (cleaned up). So "the chance that . . . a particular injustice [might be] averted by an immediate appeal does not provide a basis for jurisdiction." *Id.* at 87–88.

Castellon fails to satisfy the third prong of the collateral order doctrine analysis— that is, he hasn't identified an "important right" implicated by the orders denying him the opportunity to be resentenced in absentia. *Sueiro*, 946 F.3d at 639 (cleaned up); *see also Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878 (1994) (noting that courts have considered "importance" in the second and third prongs of the collateral order test).

6

As for this third prong, Castellon maintains that a defendant's right to waive presence is important enough to warrant collateral order review. Based on the rights this court and the Supreme Court have found sufficiently important, we can't agree.

B.

We begin our analysis in the same way the Supreme Court has: "by first combing [] precedent to identify recurring characteristics that merit collateral order appealability, and then comparing those characteristics to the proceeding at hand." *Cobra Nat. Res.*, 742 F.3d at 91 (cleaned up). As we explained in *Sueiro*,

> Given the narrowness of the collateral order doctrine in criminal cases, the Supreme Court has only held that four types of orders are immediately appealable: orders denying a Double Jeopardy Clause challenge, orders denying a Speech or Debate Clause challenge, orders denying a motion to reduce bail, and orders allowing for the forced medication of criminal defendants.

946 F.3d at 640.[*]

We agree with the government that Castellon's interest in waiving his right to be physically present at his resentencing "pales in comparison to [the four] interests that have been deemed sufficiently important to give rise to collateral order jurisdiction." *Campbell-McCormick v. Oliver*, 874 F.3d 390, 398–99 (4th Cir. 2017) (cleaned up). In each of those cases, the right at issue was guaranteed either by the Constitution or a statute, and "would

---

[*] As "the Supreme Court has recognized that the final judgment rule is 'at its strongest in the field of criminal law,' because of the compelling interest in the speedy resolution of criminal cases[,]" our importance analysis focuses solely on "collateral order jurisprudence within the criminal context." *Sueiro*, 946 F.3d at 640 (quoting *Flanagan*, 465 U.S. at 264).

be irretrievably lost if review were postponed until trial is completed." *Flanagan*, 465 U.S. at 266.

It's true that Castellon's right to waive his presence at resentencing would be lost if the status quo remains. But the district court's error in interpreting a rule governing sentencing procedure isn't compelling enough to warrant interlocutory review.

Castellon counters that we must consider the "underlying rights and interests" at issue here. Reply Br. at 7. He relies on *Under Seal v. Under Seal*, in which we held that orders authorizing disclosure of juvenile records were reviewable under the collateral order doctrine. 853 F.3d 706, 720 (4th Cir. 2016). We explained in *Under Seal* that the relevant statutory confidentiality protections "safeguard[ed] a juvenile's interest in privacy, safety, and avoiding retaliation." *Id.* at 720. As a result, we found that orders undermining those protections "implicate[d] an important interest that would be thwarted" by our refusal to hear an immediate appeal. *Id.*

But the statute at issue in *Under Seal*—the Juvenile Justice and Delinquency Prevention Act—expressly guaranteed juvenile defendants that their records wouldn't be disclosed "in order to safeguard the interests of juvenile confidentiality." *Id.* at 721 (cleaned up); *see also* 18 U.S.C. § 5038. By contrast, Rule 43's drafters apparently had judicial economy—not a defendant's right to be sentenced in absentia—in mind.

As the advisory committee explained, subsection (c)(1)(B) was "intended to remedy the situation where a defendant voluntarily flees before sentence is imposed." Fed. R. Crim. P. 43 advisory committee's note to 1995 amendment. The addition ensured that a court could avoid any "[d]elay in conducting the sentencing hearing" while the defendant

8

was gone. *Id.*; *see also Crosby v. United States*, 506 U.S. 255, 259–62 (1993) (cleaned up) (explaining that Rule 43 was meant to deal with the "defendant who flees from a courtroom in the midst of a trial"). But there's no evidence that the Rule's drafters were concerned with protecting a defendant's right to skip his sentencing.

Castellon also cites *Sell v. United States*, a case in which the Supreme Court permitted interlocutory review of orders authorizing the forced administration of antipsychotic drugs. 539 U.S. 166, 176–77 (2003). It's true that as in *Sell*, if Castellon is forced to attend his resentencing, he will "have undergone . . . the very harm that he seeks to avoid" by the time we hear his appeal. *Id.* "But under the collateral order doctrine, irreparable harm is simply not the test—even when it is irreparable harm to one's autonomy or dignity." *Sueiro*, 946 F.3d at 642.

Indeed, we have declined to extend *Sell* beyond its facts despite several invitations to do so. In *Sueiro*, for instance, we declined to apply *Sell* to a case in which the defendant, seeking to vindicate his Sixth Amendment right to self-representation, appealed the denial of his pretrial *Faretta* motion, reasoning that "*Sell* is best read as a narrow addition to the collateral order doctrine, addressing a harm (forced medication) that exists regardless of the trial context, and therefore[,]" unlike a denial of the right to self-representation, "cannot be fully remedied by a second trial." 946 F.3d at 642.

Furthermore, unlike the right not to be forcibly medicated, a violation of which "cannot be undone, even through acquittal," *Sueiro*, 946 F.3d at 642, courts don't keep a similarly close eye on a criminal defendant's Sixth Amendment right to self-representation, even considering the autonomy and dignity interests that the right protects, *see id.* at 640–

9

42. The same is true of forced transport to criminal proceedings, reflecting the lower liberty interests at stake. *See United States v. Emakoji*, 990 F.3d 885, 889–90 (5th Cir. 2021) (declining to exercise interlocutory jurisdiction over the denial of a COVID-concerned prisoner's request to not be transported for his re-arraignment).

\* \* \*

Because Castellon has failed to establish that orders mandating a defendant's presence at sentencing categorically implicate an important right, we are constrained to dismiss his appeal for lack of jurisdiction.

*DISMISSED*

WYNN, Circuit Judge, concurring in the judgment:

I concur in the judgment because I agree that under binding circuit and Supreme Court case law, we lack jurisdiction to consider this appeal, even though both parties and this panel agree that the district court erred—and even though it will be too late to correct that error by the time we have appellate jurisdiction, as the resentencing will have already occurred.

I write separately to emphasize that the absurdity of the position in which we find ourselves has little grounding in reason. Our lack of jurisdiction here flows from the fact that Castellon seeks to appeal an interlocutory order, and the Supreme Court "has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases." *Flanagan v. United States*, 465 U.S. 259, 265 (1984). Further, this Court has applied that heightened collateral-order analysis even in a case involving an order related to resentencing. *United States v. Lawrence*, 201 F.3d 536, 537 (4th Cir. 2000).

But the Supreme Court's reasoning in *Flanagan* for creating a heightened standard "in criminal cases" was "*[b]ecause of the compelling interest in prompt trials.*" *Flanagan*, 465 U.S. at 265 (emphasis added). That compelling interest protects the accused, per the Sixth Amendment. *Id.* at 264. But it also protects society at large. The passage of time renders prosecution of crimes more difficult because "evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote." *Id.* It "increases the cost of pretrial detention and extends 'the period during which defendants released on bail may commit other crimes.'" *Id.* (quoting *United*

11

*States v. MacDonald*, 435 U.S. 850, 862 (1978)). And, where an individual is wrongly accused, their prompt acquittal is important to "force[] prosecutorial investigation to continue." *Id.* at 265.

Yet those concerns are virtually absent in the resentencing context. A defendant currently in prison is unlikely to use interlocutory review as a stalling tactic, given that the harm caused by a delay in a resentencing that is anticipated to reduce his sentence would fall solely on him. And in the resentencing context, the trial record and record from the original sentencing is set; there may be a need for new evidence, in which case an evidentiary reason to avoid delay still exists, but the universe of evidence yet to be presented is much smaller than in the pretrial context. Moreover, considering that most cases of *re*sentencing are likely to have involved substantial post-judgment proceedings, the marginal value of the harm from an additional delay for appellate review is slight.

It seems to me, therefore, that the normal interlocutory-appeal limitations of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), are sufficient in the resentencing context. There is no need to apply *Flanagan*'s "utmost strictness" test in that context merely because it is criminal in nature. Indeed, in an analogous situation—an interlocutory appeal before an anticipated resentencing after a successful habeas petition—courts have applied the normal *Cohen* rules, rather than the heightened *Flanagan* rules, for determining whether they may exercise appellate jurisdiction. *E.g.*, *Bartoli v. United States*, No. 21-3100, 2021 WL 3370814, at *1 (6th Cir. Apr. 9, 2021) (per curiam); *cf. United States v. Drayton*, 834 F. App'x 829, 830 (4th Cir. 2021) (per curiam); *United States v. Barker*, 716 F. App'x 233, 234 (4th Cir. 2018) (per curiam). And tellingly, when we extended *Flanagan*

12

to the resentencing context in *Lawrence*, we did not explain why *Flanagan*'s rationale should be so applied.[*] *See Lawrence*, 201 F.3d at 537–38. *Flanagan* itself does not compel that result; although it spoke of "criminal cases," it made clear that its discussion pertained to "*pretrial* judicial decisions." *Flanagan*, 465 U.S. at 270 (emphasis added). Nor did the Fourth Circuit case that we directly relied on in *Lawrence*, *United States v. Blackwell*, require the extension of *Flanagan* to the resentencing context. *See Lawrence*, 201 F.3d at 537 (citing *United States v. Blackwell*, 900 F. 2d 742, 747 (4th Cir. 1990)). Like *Flanagan*, *Blackwell* related to a pretrial appeal. *Blackwell*, 900 F.2d at 743.

In my view, this Court sitting en banc or the Supreme Court ought to reconsider whether applying *Flanagan*'s heightened collateral-order test in the context of an appeal prior to resentencing is justifiable, or whether the normal collateral-order rules established by *Cohen* ought instead to guide our analysis in such cases.

---

[*] We did, however, state that "further analysis under the collateral order doctrine is unnecessary because of the rule that '[f]inal judgment in a criminal case means sentence. The sentence is the judgment.'" *Lawrence*, 201 F.3d at 538 (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)). Certainly, the sentence is the *final* judgment in a criminal case. But that cannot end the inquiry because, as *Flanagan* recognized, certain presentence—indeed, pretrial—orders are nevertheless immediately appealable collateral orders. *Flanagan*, 465 U.S. at 265–66.