**IN THE MATTER OF THE SUSPENSION OF DESMOND L. MAYNARD, ESQUIRE, AS A MEMBER OF THE VIRGIN ISLANDS BAR**

S. Ct. Civil No. 2013-0011

Supreme Court of the Virgin Islands

January 17, 2014

445

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for V.I. Bar Ass'n Ethics & Grievance Committee*.

SHAWN E. MAYNARD-HAHNFELD, ESQ., Law Offices of Desmond L. Maynard, St. Thomas, USVI, *Attorney for Respondent*.

CABRET, Associate Justice; BRADY, Designated Justice; and MOORE, Designated Justice.[1]

## OPINION OF THE COURT

(January 17, 2014)

PER CURIAM. This matter comes before the Court pursuant to a petition for disciplinary action filed by the Ethics and Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court, among other things, suspend Desmond L. Maynard, Esq., from the practice of law for six months. Because the EGC violated Maynard's due process rights by allowing one of its members to serve as his attorney, we deny the petition without prejudice and remand the matter to the EGC to conduct a new hearing before a different panel.

---

[1] Chief Justice Rhys S. Hodge and Associate Justice Ive Arlington Swan have recused from this matter. The Honorable Douglas A. Brady, a judge of the Superior Court, and the Honorable Thomas K. Moore, a retired judge of the District Court, sit in their place by designation pursuant to section 24(a) of title 4 of the Virgin Islands Code.

## I. BACKGROUND

Karen Sheridan and Rosemarie Prince both separately filed grievances against Maynard, stemming from his representation of the Estate of Ruth W. Bender in Super. Ct. PB. No. 6/1988 (STT). According to the grievants, the Superior Court's January 30, 2006 Adjudication directed Maynard to distribute $510,478.21 to two beneficiaries — Prince, and Sheridan's elderly father — but, although several years had passed, Maynard never distributed the assets, recorded the final adjudication, or responded to any requests for information about the whereabouts of the assets. Despite multiple requests from the Office of Disciplinary Counsel, Maynard did not respond to either grievance. Nevertheless, notwithstanding the fact that the EGC could have proceeded on a default basis, *see* V.I.S.CT.R. 207.1.11, the EGC elected to hold a hearing, and permitted Maynard to participate. Leonard B. Francis Jr., Esq., entered an appearance for Maynard and represented him at the June 25, 2012 hearing. Ultimately, the EGC issued its disposition on November 29, 2012, which found that Maynard violated numerous ethical rules and recommended that this Court impose a six month suspension as a sanction.

For reasons not clear from the record, the EGC did not file its petition for disciplinary action with this Court until February 6, 2013. After reviewing the petition and its accompanying exhibits, this Court took judicial notice that Francis is himself a member of the EGC and that the American Bar Association's Rules of Disciplinary Enforcement, which this Court adopted through Supreme Court Rule 203(a) to the extent not inconsistent with the more specific procedures set forth in Supreme Court Rule 207, *cf. Corraspe v. People*, 53 V.I. 470, 482-83 (V.I. 2010), provide that "[EGC] members shall refrain from taking part in any proceeding in which a judge, similarly situated, would be required to abstain." MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT R. 2.6(1). Thus, this Court, in a February 13, 2013 Order, required the parties to brief the issue of whether Francis should be disqualified as Maynard's counsel.

On February 27, 2013, Francis filed a response with this Court that defended his conduct. However, later that same day, Maynard notified this Court that he had discharged Francis as his counsel. The following day, Disciplinary Counsel noted that the propriety of Francis's continued representation had become moot as a result of Maynard's decision to

discharge him, but requested that this Court refer Francis to the EGC for disciplinary proceedings. Significantly, Disciplinary Counsel disclosed to this Court that Francis did not merely serve as Maynard's counsel while a member of the EGC, but is also a member of two EGC panels that were presently adjudicating two unrelated grievances that had been filed against Maynard, both of which were still pending. This Court, in a February 28, 2013 Order, agreed that the issue of whether Francis could continue to represent Maynard before this Court had become moot, and declined to refer Francis to the EGC because a referral was not necessary in light of this Court's recent decision in *In re Doe*, 58 V.I. 219, 222-23 (V.I. 2013), which clarified that Disciplinary Counsel could initiate disciplinary proceedings *sua sponte* even in the absence of a grievant.

After providing an opportunity for Maynard to obtain new counsel, this Court established briefing deadlines in a March 15, 2013 Order.[2] In his brief, Maynard not only challenges the EGC's decision on the merits, but argues that he should receive a new hearing because Francis's representation of him while not just being a member of the EGC, but serving on two panels assigned to adjudicate other grievances against him, constituted a clear conflict of interest. Notably, Maynard contends that, until he read this Court's February 13, 2013 Order, he did not know that Francis was a member of the EGC. The EGC, in turn, agrees that Francis could not undertake this representation, but contends that Maynard suffered no prejudice as a result of the conflict.

## II. DISCUSSION

■ "This Court, as the highest court of the Virgin Islands, possesses both the statutory and inherent authority to regulate the practice of law in the Virgin Islands." *In re Gonzalez*, 59 V.I. 862, 864 (V.I. 2013) (citing 4 V.I.C. § 32(e)). This authority encompasses the power to discipline attorneys for ethical misconduct. *In re Suspension of Adams*, 58 V.I. 356, 361 (V.I. 2013). The EGC, an arm of this Court, assists us in this function by "perform[ing] quasi-judicial functions" that "are subject to clearly defined rules and procedures adopted and approved by this Court." *In re Rogers*, 57 V.I. 553, 561 (V.I. 2012).

---

[2] This Court, in orders entered on April 4, 2013, and April 23, 2013, respectively granted motions by Maynard and the EGC to file their briefs under seal. Nevertheless, we reference the arguments in these documents to the extent necessary for the public to understand our decision to grant Maynard's request for a new hearing.

■ When the EGC follows those procedures — as has been the case with respect to all prior attorney discipline matters adjudicated by this Court — we independently review its factual findings and conclusions of law to determine whether there is clear and convincing evidence that the respondent committed ethical misconduct and, if so, whether to adopt the EGC's recommended discipline or impose a different sanction. *V.I. Bar v. Brusch*, 49 V.I. 409. 411-12 (V.I. 2008). However, a license to practice law "has characteristics of property which should not be withdrawn by a governing authority save by proper application of traditional concepts of due process." *Florida Bar v. Fussell*, 179 So.2d 852, 854 (Fla. 1965). Thus, "[i]n attorney disciplinary proceedings, two interests are of paramount importance. On the one hand, [the Court] must not tie the hands of grievance committees . . . with procedural requirements so strict that it becomes virtually impossible to discipline an attorney for any but the most obvious, egregious and public misconduct. On the other hand, [the Court] must ensure that attorneys subject to disciplinary action are afforded the full measure of procedural due process required under the constitution so that we do not unjustly deprive them of their reputation and livelihood." *Statewide Grievance Comm. v. Botwick*, 226 Conn. 299, 627 A.2d 901, 906 (Conn. 1993).

■■ We agree with the parties that Francis could not permissibly represent Maynard while simultaneously serving on the EGC, let alone actually presiding over other grievances involving Maynard. In addition to MODEL RULE FOR LAWYER DISCIPLINARY ENFORCEMENT 2.6(1), which subjects members of the EGC to the same rules as judges with respect to participation in an EGC proceeding, MODEL RULE OF PROFESSIONAL CONDUCT 1.12 provides, in pertinent part, that "[a] lawyer shall not negotiate for employment with any person who is involved as a party . . . in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer. . . ." MODEL RULES PROF'L CONDUCT R. 1.12(b). Similarly, MODEL RULE OF PROFESSIONAL CONDUCT 1.7 expressly provides that a concurrent conflict of interest exists, so as to preclude representation, "if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." MODEL RULES PROF'L CONDUCT R. 1.7(a)(2). The comments to Model Rule 1.7 clarify that such a risk is present when, as a result of undertaking the representation, the

lawyer may be required to cross-examine his own client in the other matter. MODEL RULES PROF'L CONDUCT R. 1.7 cmt. 6.

 Notwithstanding its agreement with Maynard that a clear conflict of interest existed, the EGC contends that this Court should not order a new hearing. First, the EGC challenges Maynard's claim that he did not know that Francis was a member of the EGC, citing a portion of the hearing transcript in which Francis states that he is "also another member of another Ethics Committee." (Tr. 247.) However, pursuant to Model Rule of Professional Conduct 1.7, the existence of a concurrent conflict of interest will not preclude representation if, and only if, four requirements are met:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

MODEL RULES PROF'L CONDUCT R. 1.7(b). As noted above, Model Rule for Lawyer Disciplinary Enforcement 2.6, as incorporated through Supreme Court Rule 203(a), holds a member of the EGC to the same standard as a judge for purposes of determining whether participation in a matter is appropriate, and thus Francis's representation of Maynard was prohibited by law. And even if Maynard knew that Francis was a member of the EGC, his consent to the representation was ineffective unless it was memorialized in writing. Moreover, to waive a conflict, Model Rule of Professional Conduct 1.7(b)(4) requires not just consent, but *informed* consent, which is defined as "agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." MODEL RULES PROF'L CONDUCT R. 1.0(e). Even if Maynard knew that Francis was a member of the EGC, absolutely nothing in the record reflects that he was ever informed that Francis was also a member of two panels assigned to adjudicate other grievances that were pending against him.

Likewise, we reject the EGC's contention that this Court should disregard the conflict because Maynard purportedly did not suffer any prejudice from the representation. We question whether the presence of such an obvious, unquestionable conflict of interest in an attorney discipline case — a quasi-criminal proceeding, *see In re Campbell*, 59 V.I. 701, 716-717 (V.I. 2013) — is even amenable to harmless error review. *Cf. United States v. Stein*, 435 F.Supp.2d 330, 371 & n.202 (S.D.N.Y. 2006) ("Structural defects exist — and prejudice must be presumed — where a defendant is actively or constructively denied counsel at a critical stage of the trial or where defense counsel is burdened by an actual conflict of interest.") (collecting cases); *Smith v. Guest Pond Club, Inc.*, 277 Ga. 143, 586 S.E.2d 623, 626 (2003) (vacating all orders in case where judge appeared as counsel to a party in a case pending before the same court in which the judge sits). In any event, we find that Maynard was likely prejudiced by the representation, since Francis's ability to represent him would clearly have been limited by his role as an adjudicator with respect to the other two grievances. For example, assuming — as the EGC contends — that Maynard was aware that Francis was a member of the EGC, it is difficult to imagine how Maynard could candidly discuss the disciplinary matter with Francis, given that Francis would sit in judgment of Maynard in the other two cases and could potentially use any confidential information against him in those proceedings.

■ ■ Additionally, we find that the EGC, by focusing on whether Maynard suffered prejudice, ignores that the overriding purpose of attorney discipline proceedings "is to protect the public and administration of justice." *In re Suspension of Welcome*, 58 V.I. 236, 257 (V.I. 2013) (quoting *Brusch*, 49 V.I. at 419). Even, assuming, without deciding, that Maynard did not suffer direct prejudice, a new hearing is warranted because to hold otherwise would cause the public to question the integrity of the attorney discipline system. As we have previously explained, a prior history of discipline is an aggravating factor that may warrant harsher discipline. *See In re Suspension of Rogers*, S. Ct. Civ. No. 2012-0059, 2012 V.I. Supreme LEXIS 79, at *17-18 (V.I. Oct. 26, 2012) (unpublished). By serving as a member of the EGC panels adjudicating Maynard's other grievances, Francis could directly affect the sanction Maynard may receive in the instant matter, even if the other grievances were not related. Moreover, members of the public could

reasonably conclude that, by retaining Francis as his counsel in this matter, Maynard might receive a more favorable disposition in the other two grievances.[3] Accordingly, a new hearing is necessary not just to ensure fairness to the parties, but to ensure that the public does not lose confidence in the integrity of proceedings before the EGC.

## III. CONCLUSION

Under these circumstances, we conclude that a new hearing represents the only appropriate remedy in this case.[4] Therefore, we deny the petition for disciplinary action and remand this matter to the EGC for a new hearing.[5] To minimize the potential for any further prejudice, we exercise our supervisory authority to direct the EGC to assign the matter to a new panel consisting only of EGC members who did not participate in the June 25, 2012 hearing.[6]

---

[3] In its brief, the EGC also emphasizes that the hearing in this matter lasted over the course of an entire business day, implying that holding a new hearing would waste a substantial amount of time and resources. However, Francis's representation of Maynard was a clear violation of this Court's rules — as the EGC now acknowledges — and thus the EGC could have avoided the expense of a lengthy hearing by simply enforcing the appropriate rules immediately upon discovering that Francis intended to serve as Maynard's counsel.

[4] Given our holding that Maynard is entitled to a new hearing, we decline to address the other claims in his brief, including his contention that the EGC's findings of ethical misconduct are not supported by clear and convincing evidence. Since the conflict of interest in this case did not just prejudice Maynard, but also may have prejudiced Disciplinary Counsel — who had to present her case knowing that she would be required to appear before Francis in other cases, including the other matters involving Maynard — it would be inappropriate to review the correctness of the EGC's decision on the merits, even if doing so may potentially provide Maynard with a greater form of relief.

[5] In reaching our decision, we recognize — if the EGC is correct that Maynard failed to timely file an answer — that the EGC was permitted to proceed on a default basis without holding a hearing. V.I.S.CT.R. 207.1.11. Nevertheless, by exercising its discretion to grant Maynard's request for a hearing, even when such a hearing may not have been necessary or required, the EGC was required to conduct that hearing in a manner that comports with due process. *Cf. Henry v. Dennery*, 55 V.I. 986, 994-95 (V.I. 2011).

[6] Ordinarily, this Court would also exercise its supervisory authority to remove Francis from the EGC panels assigned to consider the other grievances pending against Maynard. However, this Court takes judicial notice that Francis's term on the EGC expired on March 16, 2013, thus rendering such action unnecessary.